IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mark A. Dottore, Receiver for                          3:06CV01942
       Great Lakes Funding, Inc., et al.,

       Plaintiffs,

v.                                                                       ORDER

National Staffing Services, LLC, et al.,

       Defendants.

Defendant and counter-claimant Patricia Kovacs, Trustee [the Trustee] of National Staffing Services, LCC [NSS], moves this court under Fed. R. Civ. P. 15(a) to join Rurban Financial Corporation [Rurban] as a defendant to a counterclaim the Trustee has asserted against intervenor plaintiff and counter-defendant RFCBC, Inc., Rurban's wholly owned subsidiary. Because this amendment would not substantially prejudice RFCBC and because Rurban's presence is permissible under Fed. R. Civ. P. 20(a), the Trustee's motion shall be granted.

## I. Background

### A. History of Rurban and RFCBC

In 2001, Rurban owned three banking subsidiaries: the Citizens Savings Bank Company, the First National Bank of Ottowa, and the Peoples Banking Company. In June, 2001, Citizens and First National merged with and into Peoples. The surviving entity was renamed RFC Banking Company [RFC].

On August 23, 2004, Rurban incorporated a new wholly owned subsidiary, RFCBC.

On August 31, 2004, Rurban dissolved RFC. Rurban assumed all of RFC's assets and liabilities. The next day, September 1, 2004, Rurban transferred to RFCBC all the assets and liabilities Rurban acquired as part of RFC's liquidation, with the exception of $2.1 million in cash, which Rurban retained.

### B. Dottore's Claims Against National Staffing Services

Great Lakes Funding [GL Funding] is a "factor," providing financing to businesses that, as a result of their poor credit ratings, cannot obtain more conventional financing to obtain the cash flow needed to run their businesses.[1] GL Funding became insolvent. On December 9, 2003, the Lucas County, Ohio, Court of Common Pleas appointed plaintiff Mark A. Dottore as Receiver for GL Funding.

On February 29, 2000, NSS, which provides temporary employees to manufacturing companies, and GL Funding entered into a factoring and security agreement, under which, *inter alia*, NSS agreed to sell, and GL Funding agreed to purchase, certain of NSS's accounts receivable. GL Funding was authorized to collect on these accounts receivable

In his capacity as Receiver, Dottore brought suit in the Lucas County Court of Common Pleas against NSS, Wade L. Kohn, and Marjorie Flores. In his complaint, Dottore alleged, *inter alia,* that NSS breached its factoring agreement with GL Funding by failing to compensate GL Funding for the collection services GL Funding provided.

---

[1] Generally, the factor pays its customers a percentage of the face value of the customers' accounts receivable. In exchange for this cash, the customers assign their rights to those accounts receivable to the factor. The third parties who owe money on the accounts receivable ("invoice debtors") make payments directly to the factor instead of the creditor (the factor's customer) listed on the invoice. After the factor receives full payment of an invoice, the customer receives whatever amount remains (if any) minus interest and a factor's fee. By selling its invoices at a discount, a factor's customer receives cash immediately: it does not have to wait for the invoice debtors to pay the invoices.

NSS subsequently became bankrupt. On August 15, 2006, Dottore's suit against NSS was removed from the state court to this court.

### C. RFC Banking Company's and RFCBC's Intervening Complaint Against National Staffing

On or about November 18, 2004, RFC, describing itself as Peoples' successor, moved to intervene as a party plaintiff in Dottore's state court suit against NSS. RFC described Peoples as an "assignee of the interests" of GL Funding in the assets of NSS. [Doc. 45, Exh. P, at 1]. On or about November 30, 2004, RFC filed its intervening complaint.

On April 25, 2005, NSS submitted a request for admission to RFC. NSS asked RFC to admit that RFC had been dissolved through a liquidating dividend to Rurban in August, 2004. RFC did not respond to this request.

On June 7, 2005, Mary Whitmer, counsel for RFC, e-mailed John Carey, counsel for NSS, stating that she intended to deny the request for admission, but would add the following facts "by way of explanation":

> During the third quarter of 2004, the Company liquidated RFC Banking Company and the assets and liabilities of RFC Banking Company were distributed to Rurban Financial Corporation. Additionally during the third quarter, Rurban Financial Company formed a new, wholly owned Ohio Corporation, RFCBC, Inc., to serve as an asset resolution company. The assets and liabilities that had been distributed to Rurban Financial Corporation in the liquidation of RFC Banking Company, were transferred to a new subsidiary, RFCBC, Inc.
>
> There you have it. We will substitute parties.

[Doc. 38, Exh. M].

On July 12, 2005, NSS moved in state court to dismiss the case or to require RFCBC to be substituted as the real party in interest. The state court granted that motion, and RFCBC, identifying

3

itself as "a successor to the RFC Banking Company f/k/a The Peoples Banking Company," filed an amended intervening complaint on August 4, 2005.

NSS filed for bankruptcy on October 13, 2005.

On May 23, 2006, RFCBC filed its second amended intervening complaint against NSS, contending that RFCBC holds a valid, perfected, and first priority security interest in, *inter alia,* all of NSS's accounts receivable.

RFCBC contends that it acquired this security interest through a series of steps. First, the NSS-GL Funding factoring agreement, according to RFCBC, granted GL Funding a security interest in, *inter alia,* all of NSS's accounts receivable to secure payment of NSS's obligations to GL Funding. Second, RFCBC contends that under a loan agreement between Peoples and GL Funding, GL Funding granted Peoples a security interest in all of GL Funding's assets and assigned to Peoples all of GL Funding's rights in the NSS-GL Funding factoring agreement.

### D. NSS Trustee's Counterclaim Against RFCBC

In her counterclaim, the Trustee sues RFCBC for the actions of RFCBC's predecessor, the Peoples Bank. The Trustee argues that Peoples wrongfully asserted a security interest in all of NSS's accounts receivable, NSS's primary asset, thereby preventing NSS from selling or using as collateral its accounts receivable to obtain necessary financing.

Peoples previously attempted to perfect the security interest it claimed in NSS's accounts receivable by filing financing statements with the office of the Ohio Secretary of State. Claiming that Peoples' security interest was invalid, NSS asked Peoples to file a termination statement. Peoples refused. As a result, NSS itself filed a termination statement on September 25, 2003. On

October 14, 2003, Peoples filed a "correction statement" reasserting a security interest in all of NSS's accounts receivable.

According to the Trustee, Peoples' wrongfully asserted security interest forced NSS into bankruptcy. The Trustee seeks damages from RFCBC, Peoples' successor, under § 9-625(b) of the Ohio Uniform Commercial Code (O.R.C. § 1309.625), which imposes liability on a secured creditor for failing to comply with the UCC. A secured creditor may be liable for damages "resulting from the debtor's inability to obtain, or increased costs of, alternative financing." O.R.C. § 1309.625(B).

## II. Discussion

### A. Applicable Federal Rules of Civil Procedure

The Trustee cites only Rule 15(a) in moving to amend her counterclaim to join Rurban as a second counter-defendant. To decide this motion, I must consider both the general principles governing amendment under Rule 15(a) and the more specific permissive joinder provisions of Rules 13(h) and Rule 20(a). *See Hinson v. Norwest Financial South Carolina, Inc*., 239 F.3d 611, 618 (4th Cir. 2001) (holding that court considering motion to amend to join new plaintiffs must consider both Rule 15(a) and Rule 20(a)) (citing *Desert Empire Bank v. Ins. Co.*, 623 F.2d 1371, 1374 (9th Cir. 1980) (noting that both Rule 15 and Rule 20 standards are implicated by a motion to amend pleadings to add a new party)); *Elite Enterprises, Inc. v. ASC, Inc*., 2005 WL 3050279, at *2 (N.D. Ind.) (indicating that where party seeks to amend counterclaim to add counter-defendant, court must consider Rules 15, 13(h), 19, and 20).

Because the Trustee seeks to amend her counterclaim to add Rurban as a counter-defendant, I must consider Rules 15(a), 13(h), 19,[2] and 20.

### B. Amendment is Appropriate Under Rule 15(a)

Rule 15(a) governs amendments to pleadings. A party may amend a pleading once as a matter of course at any time before a responsive pleading is served, but may otherwise seek amendment only by leave of the court or by written consent of the adverse party. Because cases "should, as far as possible, be determined on their merits and not on technicalities," *Cooper v. American Emp. Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961), leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

The ultimate decision of whether to permit amendments is within the discretion of the district court. *See Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 666 (6th Cir. 2005). A court may deny a motion to amend on the basis of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).

RFCBC argues that the Trustee's current motion should be denied as untimely. According to RFCBC, Mary Whitmer's June 7, 2005, email to NSS's counsel [Doc. 38, Exh. M] put NSS on notice of the "restructuring transactions" that had taken place between Rurban, RFC, and RFCBC.

---

[2] The Trustee does not indicate whether she seeks compulsory joinder under Rule 19 or permissive joinder under Rule 20. Because I conclude that joinder is appropriate under Rule 20, I need not consider the possibility that Rurban is a necessary or indispensable party under Rule 19.

Since that time, RFCBC argues, NSS has filed two amended counterclaims, but has not sought to join Rurban as a counter-defendant. Thus, according to RFCBC, NSS's present motion is stale.

In her reply, the Trustee argues that RFCBC – not NSS – is responsible for creating confusion and delay. First, the Trustee points to RFC's intervention as a plaintiff in this case on November 19, 2004 – approximately three months after RFC was dissolved. Second, the Trustee notes that she sought discovery from RFCBC in an attempt to identify the correct counter-defendant, but RFCBC repeatedly evaded her requests for information.

While NSS could have brought its current motion earlier, delay alone – regardless of length – is an insufficient basis for a court to deny an otherwise appropriate motion for leave to amend. *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 409 (6th Cir. 2000) (citing *Moore v. City of Paducah*, 790 F.2d 557, 559-62 (6th Cir. 1986)); *Tefft v. Seward*, 689 F.2d 637, 640 n.2 (6th Cir. 1982) ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading.").[3]

If RFCBC would not suffer substantial prejudice were the Trustee's motion to amend were granted, granting leave to amend would be proper. *See, e.g., Duggins v. Steak 'N Shake, Inc*., 195 F.3d 828, 834 (6th Cir. 1999) (holding that a court must find "at least some significant showing of prejudice to the opponent" to deny a motion to amend) (quoting *Moore*, 790 F.2d at 562).

To determine whether an amendment would cause prejudice, a court should consider whether the amendment would: 1) require the opposing party to expend significant additional resources to

---

[3] Citing two Second Circuit cases, RFCBC contends that "[a] motion for leave to amend pleadings should be denied where it is made after inordinate delay, and where no satisfactory explanation is made for the delay," [Doc. 38, at 10]. This statement does not accurately state the law of the Sixth Circuit. *See, e.g.,Wallace Hardware*, 223 F.3d at 409; *Tefft*, 689 F.2d at 640 n.2.

conduct discovery and prepare for trial; 2) significantly delay the resolution of the dispute; or 3) prevent the plaintiff from bringing a timely action in another jurisdiction. *Phelps v. McClellan*, 30 F.3d 658 (6th Cir. 1994). Here, Rurban's joinder would not significantly delay resolution of this case, as discovery is ongoing and a trial date has not yet been scheduled.

Moreover, RFCBC would not have to expend significant additional resources if Rurban were joined, since Rurban's liability and RFCBC's liability depend, at least in part, on the legal consequences of the same event: namely, Peoples' assertion of a security interest in the assets of NSS. For these reasons, the Trustee's motion to amend is appropriate.

### C. Joinder is Appropriate Under Rule 20(a)

I must now determine whether Rurban's joinder is appropriate under Rule 20(a).

Rule 20(a) allows for the joinder in a single action of all persons asserting, or defending against, a joint, several, or alternative right to relief that: 1) arises out of the same transaction or occurrence; and 2) presents a common question of law or fact.

The Trustee seeks to join as a counter-defendant Rurban, RFCBC's parent corporation, on the ground that through a series of asset transfers, Rurban looted RFCBC, leaving it an "empty shell." [Doc. 35, at 2]. According to the Trustee, Rurban transferred to RFCBC the right to pursue this action against NSS, but left RFCBC with assets insufficient to withstand a possible judgment in favor of the Trustee on her counterclaim. The Trustee contends that Rurban, "as *another* successor to Peoples Bank, should be added to this litigation and be available to the Trustee for collection of any judgment awarded in this case." [Doc. 35, at 2 (emphasis in original)].

RFCBC responds that "Rurban did not participate in any of the transactions or occurrences alleged in any of the pleadings in this case and has had no communication or interaction with NSS

8

or its representatives." [Doc. 38, at 7]. RFCBC emphasizes that Rurban's only connection to this case is its ownership interest: Rurban was the sole shareholder of Peoples, and remains the sole shareholder of RFCBC. Thus, according to RFCBC, the Trustee does not meet the "same transaction or occurrence" requirement of Rule 20(a).

RFCBC misconstrues Rule 20(a). The rule does not require that each joined party have *itself* participated in the transaction or occurrence triggering the counter-claimant's claim for relief. A counter-claimant's right to relief against the original counter-defendant and any counter-claimants sought to be joined must have *arisen* out of the same transaction or occurrence. *See* Fed. R. Civ. P. 13(h), 20(a).

An entity's liability can "arise" not only from its direct participation in activities giving rise to another's cause of action, but also from the entity's legal relationship to the alleged wrongdoer. For example, a surety, agent, alter ego, or successor may encounter liability indirectly or derivatively: it is not necessary for the surety, alter ego, or successor itself to have participated in the transaction giving rise to liability. Joinder of such parties may be appropriate if the requirements of Rule 20 are satisfied. *See, e.g.,* 7 Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 3d § 1657 (2007) ("Rule 20 has enabled the joinder of . . . . a principal obligor and guarantor; a surety and principal debtor; an indemnitor and indemnitee; masters and servants, as well as agents and their principals; . . . an insurer with other defendants in a variety of actions; and individual defendants and their corporate alter egos.") (citations omitted).

The Trustee alleges that Peoples violated the UCC by wrongfully asserting a security interest in NSS's assets. The Trustee also alleges, however, that Rurban's relationship to Peoples and its successor, RFCBC (as alter ego or fraudulent transferee), renders Rurban liable for the original

9

conduct of Peoples. The same transaction or occurrence – Peoples' assertion of a security interest in NSS's assets – is, according to the Trustee, the source of both Rurban's and RFCBC's liability to NSS. As a result, Rurban's joinder meets the first requirement of Rule 20(a).

For a similar reason, Rurban's joinder fulfills the second requirement of Rule 20(a). The Trustee's claims against Rurban and RFCBC present a common question of law or fact. *See* Rule 20(a); *Westell Technologies, Inc. v. Hyperedge Corp.*, 2003 WL 22088039, at *1-2 (N.D. Ill.).[4] Whether Peoples wrongfully asserted a security interest in NSS's assets, thereby violating the UCC, is a question of law that must be resolved to determine the liability of both Rurban and RFCBC.

Moreover, Rurban's joinder promotes judicial efficiency. *See, e.g., United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) ("The intent of [Rule 13 and "related

---

[4]

In *Westell,* the plaintiff, Westell Technologies, sued HyperEdge Corporation for selling products that allegedly infringed on Westell's patent.

HyperEdge had represented itself as "'formerly Troncom'," a predecessor company ("Troncom I") that had sold the same allegedly infringing products that HyperEdge then sold. 2003 WL 22088039, at *1. As a result of a series of transactions, Troncom Acquisition Corporation ("Troncom II"), purchased all of Troncom I's assets; shortly thereafter, Troncom I was dissolved. *Id.*

Westell sought to join Troncom II as a defendant, contending that Troncom II was liable for HyperEdge's acts of infringement under one of several theories: alter ego, agency, or successor liability. *Id.*

The court rejected HyperEdge's argument that joining Troncom II would be frivolous, noting that Westell had provided "sufficient justification" for its allegations. *Id.* at *2. Because both Rule 20(a) requirements were satisfied, the court granted Westell's joinder motion. *Id.* The court also noted that its decision would not substantially prejudice the defendants, as discovery was ongoing and would not have to be "reopened or duplicated." *Id.* at *3.

Here, as in *Westell*: 1) both Rule 20(a) requirements are satisfied; 2) the Trustee has provided "sufficient justification" for its claims of Rurban's derivative liability; and 3) prejudice to Rurban and to RFCBC would be minimal, as discovery is ongoing.

rules"] is that all issues be resolved in one action, with all parties before one court, complex though the action may be.").[5]

## Conclusion

For the foregoing reasons, it is therefore

ORDERED THAT the Trustee's motion for leave to amend be, and the same hereby is, granted, and Rurban Financial Corporation be, and it hereby is, made a defendant to the Trustee's counterclaim.

So ordered.

s/James G. Carr<br>
James G. Carr<br>
Chief Judge

---

[5] RFCBC correctly notes that the Trustee must establish Rurban's liability either as an alter ego or as a fraudulent transferee before Rurban can be held responsible for RFCBC's alleged liability to NSS. There is no reason, however, that RFCBC's and Rurban's potential liability to NSS cannot be resolved in a single proceeding. Indeed, doing so makes eminent sense in the context of this litigation, which seeks to untangle a complicated web of transactions and obligations.