IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mark A. Dottore, et al.,                              Case No. 3:06CV1942

        Plaintiffs

    v.                                                        ORDER

National Staffing Services, LLC, et al.,

        Defendants

      This is a contract case on referral from the bankruptcy court. Because of the complicated factual nature of this case, I first outline the major parties involved.

      Mark A. Dottore is the receiver for Great Lakes Funding, Inc. (GL Funding). GL Funding, a factoring company, was a corporation of which Jeffrey and Thomas Bielski, cross-defendants in this suit, were the sole officers, directors and shareholders.

      John Graham is the Trustee for Great Lakes Factors, Inc (GL Factors). GL Factors, a successor factoring company to GL Funding, was a corporation of which the Bielskis were also the sole officers, directors, and shareholders.

      Patricia Kovacs is the Trustee for National Staffing Services, LLC (National Staffing). National Staffing, a limited liability company incorporated on August 11, 2000, provided temporary

1

employees to manufacturing companies. At all relevant times, Wade Kohn and Marjorie Flores, also defendants in this suit, were 50-50 partners in National Staffing.

National Staffing entered into a factoring relationship with GL Funding.

RFCBC, Inc. (RFCBC), is a bank and was the primary lender and principal source of financing to GL Funding. Bryan Jackson, not a party to this suit, served as a loan officer and then-vice-president of RFCBC.[1]

Pending are counter-motions for summary judgment on the claims of the joint movants (GL Funding, GL Factors, and RFCBC) [Docs. 132, 136], defendant National Staffing's motion for summary judgment on its crossclaims against GL Funding and GL Factors [Doc. 144], and counter-motions for summary judgment on National Staffing's counterclaims against plaintiff RFCBC. [Docs. 133, 141].

For the reasons that follow, I: 1) deny the joint movants' motion for summary judgment on their claims [Doc. 132]; 2) grant in part and deny in part National Staffing's counter-motion for summary judgment on the joint movants' claims [Doc 136]; 3) dismiss, without prejudice, National Staffing's unjust enrichment/quantum meruit and conversion claims (*see* Doc. 136); 4) deny National Staffing's motion for summary judgment on its crossclaims [Doc. 144]; 5) deny National Staffing's motion for summary judgment on its counterclaims [Doc. 141]; and 6) grant in part and deny in part RFCBC's motion for summary judgment on National Staffing's counterclaims [Doc. 133].

---

[1] I note that because the bank's identity is not at issue in this motion, I refer to it consistently as RFCBC, even though at different points in time it may have been called "Peoples" or "Rurban."

**Background**

On August 30, 2000, GL Funding and National Staffing executed a Purchase and Sale Agreement, whereby National Staffing sold and GL Funding purchased certain accounts and/or contract rights, known collectively as "receivables." The Purchase and Sale Agreement was made under the terms of a Variable Payment Schedule also executed August 30, 2000. The Purchase and Sale Agreement contained a non-recourse clause:

> Except to the extent that Seller has breached any warranty or obligation set forth in this Agreement, including those contained in Section 6 hereof, and except as otherwise provided in the Presumed Dispute Agreement dated the date hereof between Seller and Purchaser, in the event of non-payment by an account debtor of any Purchase Receivable by Purchaser, Seller shall have no obligation whatsoever to repay Purchaser any amount paid by Purchaser to Seller in such sale.

[Doc. 12-1, at 10-11].

Beginning in September, 2000, National Staffing factored its receivables with GL Funding. Kohn and Flores jointly and severally guaranteed National Staffing's contractual liabilities to GL Funding.

On June 29, 2001, National Staffing and GL Funding executed a Purchase and Sale Modification Agreement and Variable Payment Schedule. Under these agreements, National Staffing and GL Funding agreed to execute a Factoring and Security Agreement to control all future transactions between the companies. The Purchase and Sale Modification Agreement states:

> Except as expressly modified by the Factoring and Security Agreement and/or the client Guaranty, all of the terms and conditions of the original Purchase and Sale Agreement, together with the Client Guaranty of Validity, and related documents, shall remain in full force and effect, and the undersigned parties do hereby ratify and confirm said terms.

[Doc. 15-3, at 38-39].

3

The parties dispute whether they, in fact, executed such a Factoring and Security Agreement.[2] On June 18, 2002, the Bielskis formed a new company, Great Lakes Factors [GL Factors]. Throughout the Summer and Fall of 2002, the Bielskis caused GL Funding to transfer its collectable accounts receivables and the related customer accounts to GL Factors. They transferred the National Staffing account on October 30 or 31, 2002.[3]

On March 10, 2003, both GL Funding and GL Factors filed voluntary petitions in the United States Bankruptcy Court for the Northern District Court of Ohio, Western Division, for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy court dismissed the GL Funding bankruptcy and sent the case back to state court for administration. The bankruptcy court retained jurisdiction over the GL Factors bankruptcy, appointing John Graham as Trustee.

On the same day, National Staffing began collecting on invoices it had previously sold to GL Factors. National Staffing then began depositing the funds in a Fifth Third Bank account.

National Staffing asserts: 1) GL Factors never advanced the money for some of the invoices; and 2) National Staffing began collecting the invoices in response to a call from GL Factors' accountant, Rex Decker, advising National Staffing to cease deposits to GL Factors' account because GL Factors owed National Staffing more than National Staffing owed GL factors.

---

[2] Joint movants submit a signed Factoring Agreement dated February 29, 2000, and assert that the agreement, dated incorrectly, was, in fact, signed concurrently with the Purchase and Sale Modification Agreement on June 29, 2001. National Staffing counters that the Factoring Agreement is correctly dated.

[3] I previously held that GL Factors is a successor company to GL Funding. *Per-Co Ltd., v. Great Lakes Factors, Inc.*, 509 F. Supp. 2d 642, 644 (N.D. Ohio 2007), *aff'd* 299 F. App'x 559 (6th Cir. 2008).

4

GL Factors counters that Rex Decker was no longer its accountant and was, in fact, National Staffing's accountant at this time. National Staffing denies this assertion. National Staffing also alleges that the "Bielskis would visit National Staffing's office in Findlay from time to time to pick up checks in person." [Doc. 136-1, at 8].

National Staffing alleges that it relied on assurances by Bryan Jackson, a loan officer and vice-president at RFCBC regarding the safety of doing business with GL Funding. Jackson told National Staffing that RFCBC did quarterly audits on the Bielskis.

On July 18, 2003, National Staffing sent RFCBC a demand for release of two Uniform Commercial Code Form 1 (UCC-1) documents. When it did not receive a response, National Staffing filed a termination statement of RFCBC's alleged interest on September 25, 2003.

On October 14, 2003, RFCBC filed a corrective statement asserting its right to National Staffing's assets, thereby trumping National Staffing's termination statement. National Staffing was unable to obtain additional financing from any other banks.

In late 2003 or early 2004, ownership of National Staffing changed. The parties dispute many details of the sale, including the sale price.

On October 13, 2005, National Staffing filed for bankruptcy. On November 23, 2005, the Bankruptcy Court appointed Patricia A. Kovacs Trustee for National Staffing.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

### I. Breach of Contract Claim

The joint movants argue that they are entitled to summary judgment with respect to the breach of contract claims. They allege National Staffing collected money from invoices it had previously sold to GL Factors, thereby violating its contractual obligations.

The joint movants also argue that National Staffing violated the automatic stay when it collected money from the invoices after GL Factors had filed for bankruptcy and thus cannot assert a right of setoff.

Finally, the joint movants allege that even if National Staffing is not barred from alleging a setoff, it is not entitled to a setoff because the Factoring and Security Agreement controls and permitted those actions that would form the basis for the setoff. The joint movants argue that they are entitled to summary judgment because: 1) National Staffing has admitted that the Factoring and

Security Agreement was executed June 29, 2001 (and is thus controlling); and 2) the doctrine of judicial estoppel applies.

National Staffing admits that it collected on some of the invoices it had previously sold to GL Factors.[4] It argues, however, that it was justified to do so because GL Funding had already breached the contract.

National Staffing contends that the Factoring and Security Agreement is correctly dated and is thus not controlling. Finally, National Staffing sought leave to amend its pleadings regarding the date of the Factoring and Security Agreement, and argues that it is not bound by the doctrine of judicial estoppel.

"To recover upon a breach-of-contract claim, a plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Jarupan v. Hanna*, 173 Ohio App. 3d 284, 294 (2007) (internal quotation omitted). "In order to prove a breach by the defendant, a plaintiff must show that the defendant did not perform one or more of the terms of the contract." *Id.* (internal quotation omitted).

Recoupment is an affirmative defense to a breach of contract claim. *Tejada v. Toledo Surgeons*, 2009 WL 2096306, *7 (Ohio App.). Recoupment is "a right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the crossobligations or independent covenants arising under the same contract." *Easy Living, Inc. v. Whitehead*, 65 Ohio App. 2d 206, 211-12 (1979).

---

[4] It disputes that GL Factors actually paid for all the invoices.

Recoupment differs from setoff, which Ohio law defines as, "a counter demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action." *Id.* at 211.

Here, both alleged breaches occurred under the agreements allegedly concurrently executed on June 29, 2001. National Staffing's defense is, therefore, best characterized as one of recoupment. *See First Bank of Marietta v. Roslovic & Partners, Inc.*, 2004 WL 1172885, *6 n.1 (Ohio App.) (citing *Nat'l. City Bank, Nw. v. Columbian Mut. Life Co.*, 282 F.3d 407, 409 (6th Cir. 2002)). ("According to these authorities, a right of 'recoupment' arises from the same transaction or contract that creates an asset whereas 'setoff' is a broader term referring to any claim or demand, however created, that the holder of the asset has against the debtor.").

The parties expend considerable effort debating whether National Staffing's "setoff" violated the automatic stay resulting from the GL Factors bankruptcy. Because I find that National Staffing was, in fact, exercising its right of recoupment, not setoff, this is a nonissue. *See In re Wiener,* 228 B.R. 647, 650 (Bkrtcy. N.D. Ohio 1998) (holding that recoupment does not violate the automatic stay).

I do, however, find that genuine issues of material fact exist regarding the viability of National Staffing's recoupment defense. The parties dispute which contract or contracts govern, a fact that ultimately determines whether: 1) GL Funding/GL Factors also breached any obligations; and 2) National Staffing was entitled to recoupment.

National Staffing argues the Purchase and Sale Modification Agreement and the Variable Payment Schedule govern while GL Factors alleges that the Factoring and Security Agreement dated February 29, 2000 also governs. GL Factors argues that the Factoring and Security Agreement was

8

actually signed concurrently with the Purchase and Sale Modification Agreement on June 29, 2001. National Staffing counters that the Factoring Agreement was signed February 29, 2000, and thus, was not controlling on the dates in question.

### A. Judicial Admission

GL Factors alleges National Staffing cannot argue that the Factoring Agreement is correctly dated because it has made admissions to the contrary in this case. As I have allowed National Staffing to amend its pleadings, this issue is moot.[5]

### B. Judicial Estoppel

GL Factors alleges National Staffing is judicially estopped from arguing that the Factoring Agreement is correctly dated because it admitted that the Factoring Agreement in question was signed on June 29, 2001 (and attached it as an exhibit) in its Motion to Dismiss or for Abstention in *Great Lakes Factors v. National Staffing*, No. 06-3385 (Bkrtcy. N.D. Ohio, June 27, 2003); [Doc. 132-34 at 8]. National Staffing claims: 1) all parties have held different positions regarding the date of the Factoring and Security Agreement throughout their pleadings in this case; and 2) principles of judicial estoppel do not apply. National Staffing also argues that GL Factors has set forth no

---

[5] On Feburary 18, 2010, I noted the Trustee's inconsistent position regarding the date of the Factoring Agreement and *sua sponte* granted her leave to clarify her position. Both parties filed briefs on the Trustee's Motion for Leave to Withdraw or Amend Prior Statements (Doc. 161-1).
  Because I find that the amendment is not futile (because of the plethora of disputed facts surrounding the birth of National Staffing and contractual relations), was not made in bad faith, will not cause prejudice to the respondents and is not made after undue and inexcusable delay, the Trustee's motion be and the same hereby is granted. *See* Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).
  I further order all pleadings of the pre-petition debtor and of Trustee Kovacs shall be, and hereby are, amended to reflect clearly her contention that the Factoring and Security Agreement dated February 29, 2000, Purchase and Sale Agreement of August 30, 2000, Purchase and Sale Modification Agreement of June 29, 2001, are all correctly dated.

affirmative evidence that the Factoring Agreement was signed on a date other than February 29, 2000.

Judicial estoppel, an equitable doctrine, invoked by a court at its discretion, prevents a party from using "intentional self-contradiction" to gain an advantage in litigation. *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (quoting *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)). A court looks to several factors when deciding whether to apply judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled, Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations,"and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire*, *supra,* 532 U.S. at 750-51 (internal quotations and citations omitted).

The party must also have persuaded a court to accept the party's earlier position. *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 453 (6th Cir. 2005).

The parties agree that National Staffing has changed its position regarding the date of the Factoring and Security Agreement. *See e.g.* Doc. 161-1. They do not dispute that National Staffing prevailed on its Motion to Dismiss Adversary Complaint, or in the Alternative, for Abstention in the bankruptcy court. *In Re Great Lakes Factors v. National Staffing Services, et al.*, No. 06-3385 (Bkrtcy. N.D. Ohio, August 10, 2006) [Doc. 136-2 at 6]. The conflict rests, then, on whether: 1) the Bankruptcy Court relied on National Staffing's admission regarding the Factoring Agreement in granting its motion; and 2) National Staffing would derive an unfair advantage or impose an unfair

detriment on the joint movants in this case if not estopped. *See New Hampshire*, *supra,* 532 U.S. at 750-51.

### 1. Judicial Reliance

In its Motion to Dismiss Adversary Complaint, or in the Alternative, for Abstention before the Bankruptcy Court, National Staffing wrote, "Pursuant to the Modification Agreement, NSS and GL Funding agreed to execute a Factoring and Security Agreement ("Factoring Agreement") to control all future transactions between NSS and GL Funding. A copy of the Factoring Agreement is attached as 'Exhibit G.'" [Doc. 132-34, at 8].[6]

In granting National Staffing's motion and abstaining the Bankruptcy Judge wrote:

> This cause comes before the Court after hearing on the Motion of the Defendant, National Staffing Services, to Dismiss. After hearing the arguments, raised by the Parties, it is clear that given those related proceedings now pending in state court**,** the interest of comity with the state court will best be served by this Court exercising its power of Abstention in this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1).

[Doc. 136-2, at 6].

The joint movants thus have not adequately shown that the Bankruptcy Judge either accepted or relied on National Staffing's assertion regarding the date of the Factoring and Security Agreement when he granted National Staffing's motion for abstention.

Rather, it is clear that the Bankruptcy Judge granted the motion because of the pending of related proceedings in state court.

### 2. Unfair Advantage

Because no court has relied on National Staffing's statements, and because the parties to this litigation have been on notice that the date of the contract is in dispute, judicial estoppel is not

---

[6] Exhibit G is the Factoring and Security Agreement dated February 29, 2000.

necessary either to avoid unfairly advantaging National Staffing or cause unfair detriment to the joint movants. Judicial estoppel does not apply, and I deny both parties' motions for summary judgment on the breach of contract claim.

## II. Unjust Enrichment/Quantum Meruit Claims

The parties concede that an unjust enrichment claim is only appropriate if a contract claim is found invalid. *See* Doc 144-1 and Doc. 153. Because the parties agree that there is a governing contract between them, and disagree only as to its identity, I deny joint movants' motion for summary judgment on their claim, grant National Staffing's motion for summary judgment on joint movants' claim, and grant National Staffing's motion to dismiss its unjust enrichment claim without prejudice.

## III. RFCBC's Conversion Claim Against National Staffing

RFCBC alleges a conversion claim against National Staffing. National Staffing responds that this claim is merely an attempt to convert an alleged breach of contract into a tort. For the reasons that follow, I agree with National Staffing.

Ohio law defines conversion as "the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner." *Pappas v. Ippolito,* 177 Ohio App. 3d 625, 640 (2008). To prove conversion, the owner must prove 1) "he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property;" and 2) "the possessor refused to deliver the property to its rightful owner." *Id.* "The measure of damages in a conversion action is the value of the converted property at the time it was converted." *Id.*

12

"It is not a tort to breach a contract, no matter how willful or malicious the breach." *Salvation Army v. Blue Cross & Blue Shield of N. Ohio*, 92 Ohio App. 3d 571, 578 (1993). Put another way, "'Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract.'" *Greer v. Nat'l. City Corp.*, 2009 WL 3119968, *11 (Ohio App.) (quoting *Schwartz v. Bank One, Portsmouth, N.A.,* 84 Ohio App. 3d 806, 810 (1992) (citing *Ketcham v. Miller*, 104 Ohio St. 372, 377 (1922))). Adding words of intentionality to the complaint does not change this fact. *Id.*

The joint movants assert that National Staffing committed conversion when it collected invoices in violation of the Factoring Agreement. Because I find that this is a contract claim dressed in tort clothing, I grant National Staffing's motion for summary judgment and deny RFCBC's motion for summary judgment as to this claim.[7]

### IV. National Staffing's Conversion Claim Against GL Funding, GL Factors, and the Bielskis

National Staffing concedes that it has no viable conversion claim and requests dismissal of its conversion claim without prejudice. [Doc. 144-1]. There being no objection, I dismiss National Staffing's conversion claim without prejudice.

### V. National Staffing's Business Destruction Claim against RFCBC

National Staffing alleges a business destruction claim against RFCBC. RFCBC argues that it is entitled to summary judgment on this claim because: 1) it complied with O.R.C. § 1309; 2) National Staffing was not completely destroyed or even damaged because it was sold for value; 3)

---

[7] I note that RFCBC's claim would fail, even were I to analyze it as a conversion claim because RFCBC has not set forth any evidence of a demand and refusal. *See Pappas, supra,* 177 Ohio App.3d at 640.

because the outside banks refused to provide financing to National Staffing unless all three of the UCC-1 filings were released, it does not matter whether RFCBC released UCC-1 8066 because it did not have an interest in UCC-1 8065 and thus it would have remained an impediment to financing; and 4) RFCBC cannot be liable for the unreasonable conduct of the outside banks in not lending despite the UCC-1 statements and corrective statement.

National Staffing responds that: 1) RFCBC only complied with O.R.C. § 1309 with regard to UCC-1 2338; 2) the evidence is clear that RFCBC's filings and the failure to release them were the cause of National Staffing's damage; 3) UCC-1 8065, the UCC-1 in which RFCBC claims it has no interest is the same UCC-1 on which RFCBC sued National Staffing in this lawsuit; 4) National Staffing was sold for significantly less than the value of the company; and 4) the outside banks did not act unreasonably in failing to lend to National Staffing because RFCBC had filed a corrective statement and lending to National Staffing would put them at risk of being sued.

A business destruction claim is governed by Ohio's version of the UCC which states:

> Subject to divisions (C), (D), and (F) of this section, a person is liable for damages in the amount of any loss caused by a failure to comply with this chapter. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing.

O.R.C. § 1309.625.

The parties agree that the law requires a secured party to terminate its security interest within twenty days of receipt of the written demand from the debtor. *Id.* § 1309.513.

The parties also agree that UCC-1 2338 is irrelevant. Therefore, the UCC-1s in question are 8065 and 8066. Disputes exist regarding: 1) whether RFCBC controlled 8065; 2) the extent of National Staffing's injury, if any; and 3) whether this injury was the result of RFCBC's failure to release 8065 and/or 8066, and its affirmative filing of a corrective statement. This factual inquiry

14

must include a determination of when the injury to National Staffing, if any, took place. Because I find that disputed issues of material fact exist, I deny both parties' motions for summary judgment as to this claim.

### VI. National Staffing's Negligent Supervision Claim Against RFCBC

RFCBC argues that it is entitled to summary judgment on National Staffing's negligent supervision claim because National Staffing cannot establish that it "justifiably relied upon the alleged tortious conduct of Jackson and/or [RFCBC]." [Doc. 133-1, at 16].

In particular, RFCBC alleges that the National Staffing parties admitted they suspected the Bielskis of wrongdoing as early as 2001, yet continued to do business with them. In addition, RFCBC asserts that the National Staffing parties knew more about the Bielskis and Great Lakes Funding than RFCBC and thus National Staffing could not reasonably have relied on any alleged representations by RFCBC. Finally, RFCBC asserts that by April 2002, Jackson was no longer employed by RFCBC. Thus, any alleged acts by Jackson after April, 2002, are not attributable to RFCBC.[8]

National Staffing argues that it can easily demonstrate these elements with respect to Jackson. National Staffing also argues that RFCBC remains liable for acts taken after Jackson's

---

[8] RFCBC also asserts that, because all allegations made concerning Bryan Jackson by the Bielskis, GL Funding, and GL Factors have been fully litigated and resolved in favor of RFCBC, National Staffing is equitably estopped from arguing that Jackson exceeded his lending authority, and both defrauded and colluded with the Bielskis. The opinions cited by RFCBC - my opinion in *Per-Co v. Great Lakes Factors, Inc.,* 509 F.Supp. 2d 642 (N.D. Ohio 2007) [Doc 133-12], and Judge Bates' opinion in the Receiver case [Doc 133-18] - do not speak to the issues in this case. National Staffing is therefore not estopped from offering evidence of Jackson's misconduct.

termination because RFCBC continued to "perpetuate the fraud originated by Bryan Jackson."[9] [Doc. 141, at 12]. Similarly, promises made by Jackson were not revoked by RFCBC after his departure. Therefore, the injury to National Staffing continued even after Jackson's departure.

The elements of a claim for negligent supervision are: 1) the "existence of an employment relationship;" 2) "the employee's incompetence;" 3) "the employer's knowledge of the employee's incompetence;" 4) "the employee's act or omission causing the plaintiff's injuries;" and 5) "a causal link between the employer's negligence in hiring, supervising, and retaining and the plaintiff's injuries." *Lehrner v. Safeco Ins./Am. States Ins. Co.*, 171 Ohio App. 3d 570, 580 (2007).

Because I find that there are genuine issues of material fact regarding the fourth and fifth elements, I deny both parties' motions for summary judgment on this counterclaim. At a minimum there are factual disputes over: 1) the extent of National Staffing's injury; 2) when, if ever, that injury occurred; and 3) whether National Staffing relied on Jackson's representations regarding GL Funding.

## VII. National Staffing's Aiding and Abetting Fraud Claim Against RFCBC

RFCBC moves for summary judgment on National Staffing's aiding and abetting claim. In a footnote, it questions whether Ohio law recognizes such an action.

---

[9] In its reply brief [Doc. 152, at 25], RFCBC argues that portions of National Staffing's Counter-motion for Summary Judgment [Doc. 141] should be stricken because Trustee Kovacs alleges that RFCBC failed to supervise employees, other than Jackson. RFCBC contends that National Staffing did not identify these employees in its counterclaim or in discovery. National Staffing counters that it is only logical that employees other than Jackson would be supervising Jackson. I only consider RFCBC's supervision of Jackson, as National Staffing named him as the sole problematic employee in its counterclaim. I, nonetheless, examine National Staffing's arguments regarding additional employees in my evaluation of potential damages.

Because Ohio courts do "not recognize a claim for aiding and abetting common-law fraud," *Fed. Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App. 3d 366, 381 (2000), I grant, RFCBC's' motion for summary judgment as to this counterclaim.

### VIII. National Staffing's Demand to Impose Constructive Trust Against RFCBC

Ohio courts define the equitable remedy of constructive trust as a

> trust by operation of law which arises against one who, by fraud, actual or constructive, by duress or abuse of confidence or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Cundall v. U.S. Bank*, 122 Ohio St. 3d 188, 196 (2009) (internal quotations omitted).

There is no stand-alone claim for constructive trust; instead it is a remedy available only "'where there is some ground . . . upon which equity will grant relief.'" *GaymarIndustries, Inc. v. FirstMerit Bank, N.A.*, 311 F. App'x 814, 817 (6th Cir. 2009) (quoting *In re Morris*, 260 F.3d 654, 668 (6th Cir. 2001) (applying Ohio law)).

Both parties agree that imposition of a constructive trust depends on a finding of liability and must await such determination. Because I have found underlying questions of material fact on the issue of liability, I deny both parties motions for summary judgment on National Staffing's demand to impose a constructive trust.

### IX. National Staffing's Demand to Impose Equitable Subordination Against RFCBC

RFCBC alleges that Trustee Kovacs "has no standing to pursue this claim in this case because she is not a creditor ([National Staffing] owes GL Factors at least $59,056.56) and because [National Staffing] violated the stay." [Doc 152, at 38]. RFCBC's argument is not well taken.

17

The "Trustee is not simply the successor-in-interest to the Debtor: [she] represents the interest of all creditors of the Debtor's bankruptcy estate." *In re Fordu*, 201 F.3d 693, 705 (6th Cir. 1999); *see also Marlow v. Rollins Co.*, 146 F.3d 420, 423 (6th Cir. 1998). In addition, as I have found that National Staffing's actions did not violate the automatic, I need not reach the issue of whether this would preclude Trustee Kovac's request for equitable subordination.

National Staffing counters that it has met all of the requirements for equitable subordination and, therefore, summary judgment should be granted in its favor on its demand to impose equitable subordination against RFCBC.

Equitable subordination is a judge-made equitable doctrine codified in statute in 11 U.S.C § 510 (c). *U.S. v. Noland*, 517 U.S. 535, 538 (1996). A court, after notice and hearing, may:

> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> (2) order than any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510 (c).

These conditions result in equitable subordination: 1) the creditor has engaged in "'some type of inequitable conduct;'" 2) the misconduct "'resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant;'" and 3) subordination would "'not be inconsistent with the provisions of the Bankruptcy Act.'" *Noland, supra,* 517 U.S. at 538-39 (quoting *In re Mobile Steel Co.,* 563 F.2d 692, 700 (5th Cir. 1977)).

Because I find that genuine issues of material fact exist regarding the first two elements, in particular, regarding RFCBC's alleged inequitable conduct, I deny both parties' motions for summary judgment as to this claim. Ultimately, it is for the jury to determine whether 1) RFCBC,

18

through Bryan Jackson, colluded with the Bielskis, and 2) whether this alleged collusion harmed National Staffing's estate or other creditors.

## X. Damages

Because I find that genuine issues of material fact exist regarding liability, I deny all parties' motions for summary judgment as to damages.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

    1. Joint movants' motion for summary judgment [Doc. 132] be, and the same hereby is denied;

    2. National Staffing's counter-motion for summary judgment on the joint movants' claims [Doc. 136] be, and the same hereby is granted in part and denied in part;

    3. National Staffing's motion for summary judgment on its crossclaims against Gl Funding and GL Factors [Doc. 144] be, and the same hereby is denied;

    4. RFCBC's motion for summary judgment on National Staffing's counterclaims [Doc. 133] be, and the same hereby is granted in part and denied in part;

    5. National Staffing's counter-motion for summary judgment against RFCBC [Doc. 141] be, and the same hereby is denied; and

    6. National Staffing's unjust enrichment/quantum meruit and conversion claims be, and the same hereby are dismissed without prejudice.

    7.  A status/scheduling conference is set for June 28, 2010 at 1:30 p.m..

So ordered.

/s/ James G. Carr
James G. Carr
Chief Judge