IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mark A. Dottore, et al.,                                 Case No. 3:06CV1942

         Plaintiffs

v.                                                                      ORDER

National Staffing Services, LLC, et al.,

         Defendants

This is a contract case on referral from the bankruptcy court. On May 25, 2010, I decided various motions for summary judgment [Doc. 165]. Pending is National Staffing's motion for leave to amend Counts III and IV of its counterclaim, its negligent supervision and aiding and abetting claims respectively, against RFCBC. [Doc. 166]. For the reasons that follow, the motion is granted.

**Background**

On August 30, 2000, GL Funding and National Staffing executed a Purchase and Sale Agreement. The Purchase and Sale Agreement was made under the terms of a Variable Payment Schedule also executed August 30, 2000. The Purchase and Sale Agreement contained a non-recourse clause:

> Except to the extent that Seller has breached any warranty or obligation set forth in this Agreement, including those contained in Section 6 hereof, and except as otherwise provided in the Presumed Dispute Agreement dated the date hereof between Seller and Purchaser, in the event of non-payment by an account debtor of any Purchase Receivable by Purchaser, Seller shall have no obligation whatsoever to repay Purchaser any amount paid by Purchaser to Seller in such sale.

[Doc. 12-1, at 10-11].

Beginning in September, 2000, National Staffing factored its receivables with GL Funding. Defendants Kohn and Flores jointly and severally guaranteed National Staffing's contractual liabilities to GL Funding.

On June 29, 2001, National Staffing and GL Funding executed a Purchase and Sale Modification Agreement and Variable Payment Schedule. Under these agreements, National Staffing and GL Funding agreed to execute a Factoring and Security Agreement to control all future transactions between the companies. The Purchase and Sale Modification Agreement states:

> Except as expressly modified by the Factoring and Security Agreement and/or the client Guaranty, all of the terms and conditions of the original Purchase and Sale Agreement, together with the Client Guaranty of Validity, and related documents, shall remain in full force and effect, and the undersigned parties do hereby ratify and confirm said terms.

[Doc. 15-3, at 38-39].

The parties dispute when they, in fact, executed such a Factoring and Security Agreement.

On June 18, 2002, the Bielskis formed a new company, Great Lakes Factors [GL Factors]. Throughout the summer and fall of 2002, the Bielskis caused GL Funding to transfer its collectable accounts receivables and the related customer accounts to GL Factors. The National Staffing account was transferred on October 30 or 31, 2002.[1]

---

[1] I previously held that GL Factors is a successor company to GL Funding. *Per-Co Ltd., v. Great Lakes Factors, Inc.*, 509 F. Supp. 2d 642, 644 (N.D. Ohio 2007), *aff'd* 299 F. App'x 559 (6th

2

On March 10, 2003, both GL Funding and GL Factors filed voluntary petitions in the United States Bankruptcy Court for the Northern District Court of Ohio, Western Division, for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy court dismissed the GL Funding bankruptcy and sent the case back to state court for administration. The bankruptcy court retained jurisdiction over the GL Factors bankruptcy, appointing John Graham as Trustee.

On the same day, National Staffing began collecting on invoices it had previously sold to GL Factors. National Staffing then began depositing the funds into a Fifth Third Bank account. National Staffing asserts: 1) GL Factors never advanced the money for some of the invoices; and 2) National Staffing began collecting the invoices in response to a call from GL Factors' accountant, Rex Decker, advising National Staffing to cease deposits to GL Factors' account because GL Factors owed National Staffing more than National Staffing owed GL factors.

GL Factors counters that Decker was no longer its accountant and was, in fact, National Staffing's accountant at this time. National Staffing denies this assertion. National Staffing also alleges that the "Bielskis would visit National Staffing's office in Findlay from time to time to pick up checks in person." [Doc. 136-1, at 8].

National Staffing alleges that it relied on assurances by Bryan Jackson, a loan officer and vice-president at RFCBC regarding the safety of doing business with GL Funding. Jackson told National Staffing that RFCBC did quarterly audits on the Bielskis.

On July 18, 2003, National Staffing sent RFCBC a demand for release of two Uniform Commercial Code Form 1 (UCC-1) documents. When it did not receive a response, National Staffing filed a termination statement of RFCBC's alleged interest on September 25, 2003.

---

Cir. 2008).

3

On October 14, 2003, RFCBC filed a corrective statement asserting its right to National Staffing's assets, thereby trumping National Staffing's termination statement. National Staffing was unable to obtain additional financing from any other banks.

In late 2003 or early 2004, ownership of National Staffing changed. The parties dispute many details of the sale, including the sale price.

On October 13, 2005, National Staffing filed for bankruptcy. On November 23, 2005, the Bankruptcy Court appointed Patricia A. Kovacs Trustee for National Staffing.

## Discussion

National Staffing seeks leave to amend: 1) Count III of its counterclaim, negligent supervision, to include supervision of C. Robert Green, also a bank officer; and 2) Count IV of its counterclaim, aiding and abetting, to assert a claim for fraud against the bank.

RFCBC objects to National Staffing's motion, and claims 1) "the motion is nothing more than a motion to reconsider"; 2) "the relief requested is barred by the applicable statute of limitation[s]"; and 3) "the proposed amendment is untimely and prejudicial."[2] [Doc. 169, at 1].

National Staffing responds that it does not seek reconsideration of my prior ruling; it seeks to conform to it. It also argues that the requested amendment is not barred by the applicable statute of limitations because it relates back to the original filing date. Finally, National Staffing alleges that the proposed amendment is not untimely or prejudicial because RFCBC has been on notice of the facts of this claim since National Staffing submitted its supplemental answers to interrogatories.

---

[2] While RFCBC purports to object to National Staffing's requested amendments to both counts, it only specifically addresses Count IV. Because RFCBC has asserted no specific objections to Count III, and because I do not find the amendment unduly prejudicial, I grant without further discussion National Staffing's motion to amend Count III of its counterclaim.

4

The ultimate decision of whether to permit amendments is within the discretion of the district court. See *Brainard v. American Skandia Life Assur. Corp*., 432 F.3d 655, 666 (6th Cir.2005). A court may deny a motion to amend on the basis of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Brumbalough v. Camelot Care Ctrs., Inc*., 427 F.3d 996, 1001 (6th Cir. 2005).

### A. Delay

Delay alone-regardless of length-is an insufficient basis for a court to deny an otherwise appropriate motion for leave to amend. *Wallace Hardware Co., Inc. v. Abrams,* 223 F.3d 382, 409 (6th Cir. 2000) (citing *Moore v. City of Paducah*, 790 F.2d 557, 559-62 (6th Cir. 1986)); *Tefft v. Seward*, 689 F.2d 637, 640 n. 2 (6th Cir. 1982) ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading.").

In this case, National Staffing sought to amend Count IV a mere thirteen days after my summary judgment decision. While I believe that Ohio courts have been clear on their lack of recognition of a claim for aiding and abetting, I agree with National Staffing that some federal courts have complicated the landscape by speculating that such a claim might exist under Ohio law. I find, therefore, that National Staffing's motion, filed thirteen days after my May 25th Order determining the proper law under which such a claim should be filed is not untimely.

### B. Futility

With regard to RFCBC's statute of limitation concerns, Fed. R. Civ. P. 15 permits relation back of amendments to pleading when "the claim or defense asserted in the amended pleading arose

out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original [timely filed] pleading."

National Staffing's proposed amendment to Count IV most certainly arose out of the same conduct, transaction and occurrence set forth in its aiding and abetting claim and, in fact, contains much of the same language as the original claim. I, find, therefore that the proposed amendment would relate back and is thus not futile.[3]

### C. Prejudice

If RFCBC would not suffer substantial prejudice were the Trustee's motion to amend granted, granting leave to amend would be proper. *See, e.g., Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (holding that a court must find "at least some significant showing of prejudice to the opponent" to deny a motion to amend) (quoting *Moore*, *supra*, 790 F.2d at 562).

To determine whether an amendment would cause prejudice, a court should consider whether the amendment would: 1) require the opposing party to expend significant additional resources to conduct discovery and prepare for trial; 2) significantly delay the resolution of the dispute; or 3) prevent the plaintiff from bringing a timely action in another jurisdiction. *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994).

RFCBC alleges that "prior to the filing of the Motion, neither Trustee Kovacs nor [National Staffing] nor any of the other parties represented by counsel for Trustee Kovacs alleged that Peoples Bank, RFCBC, Inc. and/or Rurban Financial Corporation (collectively, "Peoples") committed a fraud on [National Staffing]." [Doc. 169, at 2].

---

[3] I also find unpersuasive RFCBC's argument that National Staffing has not plead the facts of fraud with sufficient particularity to overcome a motion to dismiss.

On March 11, 2009, in its supplemental answers to interrogatories, National Staffing stated, "An example of the fraud against National Staffing includes the Spectrum invoices . . . Great Lakes Funding, in collusion with Bryan Jackson, misappropriated the hold account and reserve account funds owed to National Staffing."

In the same document National Staffing stated, "Bryan Jackson and other officers of the bank failed to disclose to [National Staffing] the Bank's knowledge of the fraud with the result that [National Staffing] was ultimately caught up in the collapse of the Great Lakes entities." [*Id.* at 19].

RFCBC was thus on notice, by March 11, 2009, at the latest, that National Staffing had some sort of fraud claim against it.

In addition, National Staffing's proposed amendment is substantially similar to its aiding and abetting claim.

National Staffing's proposed amendment would not substantially prejudice RFCBC or cause significant delay in the proceedings.

Moreover, RFCBC would not have to expend significant additional resources if National Staffing's claim were amended, as RFCBC has already engaged in discovery regarding National Staffing's aiding and abetting fraud claim. For these reasons, National Staffing's motion to amend Count IV is appropriate and accordingly granted.

**Conclusion**

For the foregoing reasons, it is hereby:

ORDERED THAT: National Staffing's motion for leave to Amend Counterclaim [Doc. 166] be, and the same hereby is, granted.

So ordered.

s/James G. Carr
U.S. District Judge
