IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mark A. Dottore, Receiver, et al.,                          Case No. 3:06CV1942

         Plaintiff

         v.                                                               ORDER

National Staffing Services, LLC, et al.,

         Defendant

         This complicated suit, referred from the Bankruptcy Court, arises from the demise (and precedent malfeasance by the owners) of two entities, Great Lakes Funding (Funding) and Great Lakes Factors (Factors). Thomas Bielski founded Funding in the 1990s. His son Jeffrey joined him in the business a some point thereafter.

         Funding was in the factoring business, whereby it would purchase accounts receivable from its customers and advancing monies to them so they could meet operational expenses. Funding, in turn, would collect the receivables.

         The Bielskis created Factors in June, 2002. They then caused Funding to transfer collectible receivables to Factors, while leaving uncollectible receivables with Funding.

         To get its own operating funds, Funding obtained loans from the predecessor to the banking entity known in this suit RFCBC, Inc. (the Bank). The Bielskis created Factors to avoid paying Funding's debt to the Bank.

         National Staffing Services, LLC (Staffing) factored its accounts receivable with Funding. For purposes of this opinion, the parties agree that Staffing originally entered into its relationship

with Funding as a result of fraudulent representations by Bryan Jackson, the Bank's former loan officer. Jackson's false statements related to Funding's financial well-being. At the time of those statements, Staffing alleges, neither Funding nor its obligations to the Bank were in good shape.

Funding and Factors filed bankruptcy petitions in March, 2003. Staffing has also filed a bankruptcy petition: Patricia Kovacs (Trustee Kovacs) is serving as Staffing's Trustee in Bankruptcy.

Funding's receiver, Mark A. Dottore, has sued Staffing to recover funds that Staffing allegedly owes to Funding. The Bank has done likewise.

Staffing has filed a counter-claim against the Bank, claiming that the Bank is responsible for its demise. Staffing claims that the Bank: 1) through Jackson, committed fraud; and 2) negligently supervised Jackson, thereby enabling him to perpetrate his fraud on Staffing.

Staffing also alleges that during a meeting in December, 2002 (after the Bank had fired Jackson), the Bank failed to inform Staffing about the existence of Factors.

Defending against Staffing's counter-claim, the Bank argues that Jackson's misrepresentations related solely to Funding, and had nothing to do with Factors.

There is no dispute that this is so: Jackson was gone from the Bank when Factors took over Staffing's factoring from Funding.

With regard to Staffing's December, 2002, meeting with bank officials, including C. Robert Green, Jackson's successor as loan officer, the Bank claims that it was not aware of Factors' existence at that time. Thus, it argues, it could not have fraudulently failed to inform Staffing about Factors. If that is so, the Bank likewise contends, no harm came to Staffing from Jackson's fraudulent statements about Funding or its failure to supervise his activities.

Staffing disputes the Bank's claim of ignorance about the existence and operation of Factors. It points to a statement by Green in his deposition that he knew of Factors in late 2002. When asked to be more specific, he "guessed" he knew in "the October, November timeframe of 2002" about Factors' existence. (Doc. 216-1, at 3).

The Bank continued throughout this period to provide funds to Funding. It claims that the Bielskis successfully defrauded it (*i.e.*, through the manipulation and operation of Factors and "looting" of those of Funding's receivables that were collectable).

Wade Kohn, Staffing's principal, testified that sometime late in 2002 the Bielskis approached him about signing new documents with Factors. In response, Kohn testified, he told the Bielskis that Staffing did not know what Factors was, did not want to do business with Factors and would not sign any documents. Kohn understood from the Bielskis that they were having problems with the Bank.

Nonetheless, Staffing factored its receivables with Factors, and, as the Bank points out, did so knowingly. The Bank also notes that, even after Funding and Factors had filed their bankruptcy petitions, Staffing factored $175,084.14 in additional receivables with Factors.

Starting in early March, 2003 (the same month in which Funding and Factors were to file their bankruptcy petitions), Staffing did not pay over funds due to Factors. Instead, it kept those monies as a "self-help" offset against monies that Staffing believed Factors owed it.

In view of that circumstance, Factors Trustee, John Graham, did not make arrangements, as he did with Factors' other customers, to transfer their factoring to another entity.

During March and April, 2003, Staffing sought to obtain funds from National City Bank and Fifth Third Bank. But those efforts, according to Count I of Staffing's complaint (alleging business destruction (not at issue in the pending motion)), were not successful. That was so, Staffing

3

contends, because the Bank refused to release a security interest *vis-a-vis* Staffing it had obtained from the Bielskis. Without funding, Staffing filed its bankruptcy petition.

The Bank has filed a motion for summary judgment (Doc. 207) as to Trustee Kovacs's claims in Amended Counts III and IV in Staffing's Amended Counter-Complaint. (Doc. 174). For the reasons that follow, the motion shall be granted.

## Discussion

For purposes of the pending motion there appears to be no dispute that Jackson made false statements about Funding, knew that they were material and false and intended that Staffing would rely on those statements to factor its receivables with Funding. Nor, for purposes of this opinion, do the parties dispute the reasonableness of Staffing's reliance on Jackson's statements when and as made. Thus, as to Jackson and his statements about Funding, Staffing would have a viable claim for fraud as to any ensuing damages.[1]

Staffing does not claim that the Bank made misstatements about Factors before Factors took over factoring Staffing's accounts receivable. By then, Jackson was no longer with the Bank.

Absent affirmative misstatements to Staffing, to sustain its fraud claim against the Bank Staffing must show that the Bank concealed material facts of which it had knowledge and that it justifiably relied on the facts as it knew them.

---

[1] "The elements of fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Burr v. Stark Cty. Bd. of Commrs,* 23 Ohio St.3d 69 (1986) (Syllabus ¶ 2).

The only concealed fact on the Bank's part to which Staffing points is knowledge of Factors' existence before Staffing's December, 2002, meeting with Green and other Bank officials. The Bank, Staffing alleges, did not tell it about the changeover from Funding to Factors. Staffing does not allege that the Bank knew, or reasonably should have known about what the Bielskis were doing with Factors and to Funding, the Bank and Staffing.

Nonetheless, Staffing claims that the Bank's concealment of Factors' existence, coupled with Jackson's precedent lies, give rise to a cognizable claim for fraudulent nondisclosure.

The material fact was what the Bielskis were doing with Factors, not that they had created it. Their use of Factors, not its formation, caused harm. That being so, no rational trier of fact could find, as Staffing claims, that nondisclosure by the Bank of what it knew about Factors as of December, 2002, constituted fraud.

In any event, even if the Bank breached a duty to disclose, no rational trier of fact could find that Staffing's reliance was justifiable. Kohn had met with the Bielskis. He learned the Bank was giving them problems. They wanted him to sign some documents having to do with Factors.

Kohn did not understand what they were up to. He did not like it enough to sign any papers. But, as time passed, he continued to use the Bielskis, operating to his knowledge as Factors, to factor his accounts receivable. He ignored the concern he had felt and caution he had expressed.

The Bank did nothing to entice him into a relationship with Factors. Even if it should have told him that Factors was part of the landscape, he could see that for himself. The Bank didn't keep any secrets to Staffing's disadvantage.

To the extent, moreover, that Staffing may contend that by the end of 2002 it was relying either on Jackson's statements about Funding or the Bank's failure to tell him about Factors, no

rational jury could find such reliance justifiable. Jackson and Funding were both gone. And Staffing knew as much, if not more, about Factors as the Bank. Even if it did not, it certainly knew what it claims the Bank did not tell it—namely, that the Bielskis were now factoring as Factors.

Despite its concurrent, or near concurrent knowledge of that which it claims the Bank should have told it, Staffing did not take the steps on its own that it now claims it would have taken had the Bank said something at the December, 2002, meeting. That failure (to find another factor) led in time to bankruptcy and this suit. But Staffing, at least *via* its fraud claim, cannot hold the Bank accountable for its losses.

The Bank has argued extensively that there is no proximate cause between whatever the Bank did or did not do and the losses suffered by Staffing.

I view the legal circumstances differently than the parties in their briefs—I have focused on the elements of Staffing's proof, and have found it cannot prevail. But the Bank's argument as to proximate cause is, in any event, on the mark: whatever it did or failed to do relative to fraud did not cause Staffing's demise.

By the time Staffing kept working with the Bielskis d/b/a Factors, it knew as much about the circumstances as its evidence shows the Bank knew about Factors' existence.

Because there is no carry-over from Jackson's fraud to Staffing's present fraud claim against the Bank in Amended Count III, likewise there is no carry-over effect from the Bank's original negligent supervision giving rise to liability on Amended Count IV.

## Conclusion

Jackson lied about Funding. Staffing relied, as Jackson hoped it would, on those lies. But thereafter no one at the Bank made any affirmative misrepresentations about the switch from

Funding to Factors. Nor does the record show that anyone with the Bank knew anything about the Bielskis' use of Factors to cheat the Bank and Staffing that the Bank should have communicated to Staffing.

Instead, Staffing knew what the Bank knew:  Factors existed. As time passed, Staffing also knew that Factors was doing the factoring work that Funding had done for it. Staffing also knew that the Bank was giving the Bielskis problems.

Staffing did not act to protect itself, though nothing the Bank said or left unsaid made Staffing any more unaware of the circumstances than it already was. Staffing's lack of action, rather than the Bank's failure to tell it anything, contributed most proximately to what happened to it.

It is, therefore,

ORDERED THAT

1. The motion of RFCBC, Inc. and Rurban Financial Corporation for summary judgment (Doc. 207) be, and the same hereby is granted; and

2. A telephone pretrial conference is scheduled for January 25, 2011 at 10:00 a.m. to confirm the settlement conference and trial dates and to discuss any outstanding discovery issues.  Counsel shall call the bridge line at 419-213-5509, access code 550911.

So ordered.


                                                    s/James G. Carr
                                                    United States District Judge